## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DAVID GREGOR,                          )
                                       )
                    Petitioner,        )
v.                                     )          Case No. CIV-09-464-W
                                       )
ERIC FRANKLIN, Warden,                 )
                                       )
                    Respondent.        )

## REPORT AND RECOMMENDATION

Petitioner, David Gregor, a state prisoner appearing *pro se*, has filed a Petition seeking

a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] For the reasons set forth below, it is

recommended that the Petition be denied.

## I.     Factual Background and Relevant Case History

In the early Easter morning hours of April 16, 2006, around 2:00 a.m., Mr. Clarence

Muno, who lives near Clinton, Oklahoma, called Clinton police to report he was hearing

voices and a "beeping noise" in the nearby Western Equipment yard.

Soon after police arrived, Jimmy Evans, sales manager for Western Equipment, was

called to the scene. He inspected the yard and noted that equipment and merchandise had

been moved around sometime after Western Equipment had closed at noon the previous day.

---

[1]Petitioner has filed a petition accompanied by a brief in support [Doc. #1] (Petitioner's Original Brief) and a Supplemental Brief [Doc. #18] (Petitioner's Supplemental Brief) challenging the constitutionality of his state court conviction. Respondent has filed a response to the petition and original brief [Doc. #7] (Original Response), a response to the Petitioner's Supplemental Brief [Doc. #19] (Supplemental Response) and an additional supplemental brief to inform this Court of new, additional authority [Doc. #23]. Petitioner has filed a reply to Respondent's Original Response [Doc. #10] (Original Reply), to Respondent's Supplemental Response [Doc. #20] (Supplemental Reply) and to Respondent's Supplemental Brief regarding the new authority [Doc. #24].

A trailer had been moved and loaded with four Arctic Cat ATVs. Another ATV was upright near the trailer, and a crate holding another ATV was on its side, having apparently been moved from the south side of the building. A pair of bolt cutters were on the tongue of the trailer, and the company's forklift was outside the building. An amber rotating strobe light had been broken off the forklift and was lying nearby.

Upon further investigation, sheriff deputies and an investigator discovered footprints in the dirt and gravel surface near the spot where the trailer had been parked at closing the previous day. They also found footprints on a heavy plastic sheet which had been removed from the crate holding an ATV.

A deputy sheriff responding to a call for backup encountered Petitioner and two other men walking in a bar ditch less than a mile from the Western Equipment yard. The deputy detained the men for questioning. Officers also stopped two women who drove by the men in a pickup equipped with a trailer hitch. The women, one of whom was Petitioner's wife, had been stopped earlier by a patrol officer based on the officer's observation that they were driving suspiciously. All five were arrested and charged with Attempted Grand Larceny. They were tried in a joint trial in the District Court of Custer County, State of Oklahoma, Case No. CF-2006-175. None of the five defendants testified at trial, but statements some of them had made during police interrogation were admitted through the testimony of the interrogating officers.

On March 29, 2007, a jury convicted Petitioner and his two male co-defendants of Attempted Grand Larceny and acquitted the two female co-defendants. Petitioner and his

two male co-defendants were each sentenced to a prison term of 40 years. Their sentences were enhanced based upon prior convictions.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA) raising the following claims:

1. The admission of statements by non-testifying co-defendants violated Petitioner's Confrontation Clause rights under the Sixth Amendment based upon *Bruton v. United States*, 391 U.S. 123 (1968);

2. The jury was not properly instructed on the elements of the charged offense;

3. Trial counsel was ineffective in failing to challenge the admission of statements made to the police by non-testifying co-defendants and in failing to challenge the jury instructions;

4. The evidence was insufficient to sustain the conviction; and

5. Cumulative error denied Petitioner a fair trial.

*See* Original Response Exhibit 1, Appellant's Brief. The OCCA affirmed Petitioner's conviction on April 29, 2008. *See* Original Response Exhibit 3, OCCA Opinion.

Petitioner raised the following claims in the instant habeas petition:

1. The admission of statements by non-testifying co-defendants violated Petitioner's right to confront witnesses against him, based upon *Bruton v. United States*, 391 U.S. 123 (1968), as well as the subsequent rule set forth in *Crawford v. Washington*, 541 U.S. 36 (2004) (out-of-court, testimonial statements made by a non-testifying witness not admissible);

2. The jury was not properly instructed on the elements of the charged offense;

3.       Trial counsel was ineffective in failing to challenge the admission of statements of non-testifying co-defendants and in failing to challenge the jury instructions;

4.       The evidence was insufficient to sustain the conviction; and

5.       Cumulative error deprived Petitioner of a fair trial.

Petitioner had not exhausted his state court remedies with respect to his claim for habeas relief based on *Crawford v. Washington*.  Because Petitioner had submitted a "mixed petition" with both exhausted and unexhausted claims, the Petition was subject to dismissal pursuant to  *Pliler v. Ford*, 542 U.S. 225, 227 (2004) and *Rose v. Lundy*, 455 U.S. 509 (1982), and Petitioner was given an opportunity to remedy the mixed petition.   On December 9, 2009, Petitioner moved for stay and abeyance of his federal habeas case to allow him the opportunity to exhaust his *Crawford* claim.  The stay was granted on January 12, 2010, and this habeas case was administratively closed.

Petitioner returned to state court and filed an application for post-conviction relief. In that proceeding, Petitioner raised two claims: (1) that the admission of his co-defendants' statements at trial violated his rights under the Confrontation Clause pursuant to the rule in *Crawford* and (2) that his appellate counsel was ineffective in failing to raise the *Crawford* claim on direct appeal.  The district court denied post-conviction relief, and the OCCA affirmed that decision.  *See* Plaintiff's Supplemental Brief, Exhibit 3, OCCA Order.

On October 13, 2010, Petitioner notified this Court that he had exhausted his state court remedies.  The case was then re-opened, and the parties were granted the opportunity to submit additional briefing on the *Crawford* issue.  All issues are now fully briefed.  The

following grounds for relief, submitted in Petitioner's Original Brief and Supplemental Brief,

are now before this Court for consideration:

1.    The admission of statements by non-testifying co-defendants violated Petitioner's Sixth Amendment right to confront witnesses against him, and Petitioner's appellate counsel was ineffective in failing to raise this issue as a Confrontation Clause violation pursuant to *Crawford v. Washington*.

2.    The jury was not properly instructed on the elements of the charged offense;

3.    Trial counsel was ineffective in failing to challenge the admission of statements of non-testifying co-defendants and in failing to challenge the jury instructions;[2]

4.    The evidence was insufficient to sustain the conviction; and

5.    Cumulative error deprived Petitioner of a fair trial.

## II.    <u>Standard of Review</u>

The standards of review under the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA) apply to Petitioner's grounds for relief, all of which have now been

adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188

(10th Cir. 2004).  Under AEDPA, this Court may grant Petitioner habeas relief only if the

---

[2]This Court need not separately address Petitioner's claims of ineffective assistance of trial counsel which is governed by the same legal standard applicable to his claim of ineffective assistance of appellate counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984).  As discussed *infra*, the substantive claim regarding jury instructions upon which one of  Petitioner's ineffective assistance of trial counsel claims is based is without merit; the jury instructions did not violate Petitioner's due process rights.  Therefore, Petitioner cannot demonstrate that he was prejudiced by trial counsel's performance.  While trial counsel's failure to object to the confrontation clause violation could be viewed as deficient performance on the part of trial counsel, as discussed *infra*, Petitioner cannot demonstrate that he was prejudiced by the alleged deficient performance.

state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning.  *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable.'").  There is no text in the statute requiring that a state court's decision include a statement of the reasoning underlying the decision.  "The statute refers only to a 'decision,' which resulted in an 'adjudication.'" *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct.770, 784 (2011).

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself.  *Id*. at 406.  A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle

from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

## III. <u>Analysis</u>

### A. <u>Confrontation Clause Claims</u>

The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The purpose of the Confrontation Clause is to allow the accused to test the reliability of a witness's testimony through the crucible of cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 61 (2004); *see also United States v. Cesareo-Ayala*, 576 F.3d 1120, 1130 (10th Cir. 2009) ("The role of the hearsay rule (and the related component of the right to confrontation) is to protect against statements that cannot be challenged by cross-examining the speaker.").[3]

---

[3]"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c) (internal quotation marks omitted); *see also* Okla. Stat. tit. 12, § 2801(A)(3).

Petitioner contends that his Sixth Amendment right to confront witnesses against him was violated by the admission into evidence of the out-of-court statements of his non-testifying co-defendants. In this habeas action, Petitioner develops his claim by focusing on the introduction of statements made by Petitioner's co-defendant, Leonard Rackley, during an interrogation conducted by Steve Moss, the investigator for the Custer County Sheriff's Department. The interrogation took place at the sheriff's office after Investigator Moss advised Mr. Rackley of his rights under *Miranda*. Mr. Rackley signed a waiver of his *Miranda* rights and agreed to proceed with an interview. At trial, Mr. Moss testified as to statements made by Mr. Rackley during his interrogation:

> I basically asked him what had happened earlier in the morning, and he told me that they had been at Lake Thunderbird all evening and they were on their way to Woodward because Mr. Gregor had to take a urine test for his job. They had stopped in Weatherford and got something to eat and after they left there, the Gregors got into an argument, and she kicked them out. I then asked him what was he doing around Western Equipment, and he then denied being around Western Equipment. I said, "Well, what if I said your footprints were found on the Western Equipment yard?" He said, "Well, I walked through there, but I didn't steal nothing."

Trial Transcript at 325.

1.  **Confrontation Clause Claim Based Upon *Bruton v. United States* – Raised on Direct Appeal**

On direct appeal, Petitioner's counsel relied solely on *Bruton v. United States*, 391 U.S. 123 (1968) in support of Petitioner's Confrontation Clause claim. In *Bruton*, the Court held that in a joint trial of defendants, the confession of a non-testifying accomplice/defendant which implicates another defendant in the crime is not admissible even

when the jury is instructed to disregard the confession as it relates to the accomplice's co-defendant. *Bruton* at 137 ("[I]n the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all.") (citations omitted). On direct appeal, the OCCA considered the application of *Bruton* and concluded that the rule in *Bruton* did not apply to the statements made by Petitioner's non-testifying co-defendants because "the statements did not expressly implicate Gregor in the crime." *See* Original Response, Exhibit 3 at 2.

Mr. Rackley's out-of-court statement was not tantamount to a confession that he and his co-defendants had committed the crime with which they were charged – attempted grand larceny of ATVs from the Western Equipment lot. The rule set forth in *Bruton*, therefore, did not expressly apply to the admission of Rackley's statement, and the decision of the OCCA regarding the application of *Bruton* to the facts of this case was neither contrary to, nor an unreasonable application of *Bruton*.

In the years since *Bruton*, however, a fundamental shift has occurred in the Supreme Court's confrontation clause jurisprudence. *Bruton* must be read in light of *Crawford v. Washington*.

## 2. Confrontation Clause Claim Based Upon *Crawford v. Washington* – Raised in Post-Conviction Proceedings

As noted above, Petitioner returned to state court to file an application for post-conviction relief. In his post-conviction proceeding, Petitioner claimed (1) the admission of

his non-testifying co-defendants' statements violated his rights under the Confrontation Clause under the rule set forth by the Supreme Court in *Crawford v. Washington*,[4] and (2) his appellate counsel was ineffective in failing to challenge the admission of the statements based on the holding in *Crawford v. Washington*. Although the OCCA found the first claim was procedurally barred because it could have been raised on direct appeal and was not, the OCCA nevertheless addressed the merits of the underlying Crawford claim in considering the merits of Petitioner's ineffective assistance of appellate counsel claim. In doing so, the OCCA stated the following:

> *Crawford* did not change the principle recognized in *Bruton* that a co-defendant's statements must directly inculpate the defendant before a confrontation violation occurs. As found in Petitioner's direct appeal, the co-defendants' statements, of which Petitioner complains, did not directly inculpate or expressly implicate Petitioner in the crime.

Respondent's Supplemental Response, Exhibit 3 at 2 (citations omitted). Here, the OCCA misstated the principle recognized in *Bruton* (*i.e.*, that in a joint trial, even limiting instructions to the jury will not cure a violation of the Confrontation Clause claim where the out-of-court confession of a nontestifying accomplice admitted into evidence directly implicates a co-defendant). And, significantly, the OCCA did not apply the holding in *Crawford*.

---

[4]As noted above, in this habeas action Petitioner develops his claim by focusing on the statements of co-defendant Rackley. Petitioner fails to develop any constitutional claim based on the statements of other co-defendants.

The Supreme Court's holding in *Crawford* arose from the following facts and state court rulings. Michael D. Crawford was tried in state court for stabbing a man who had allegedly tried to rape his wife, Sylvia. At trial, Crawford claimed self-defense. In an attempt to undermine Crawford's claim of self-defense, the State played for the jury Sylvia's recorded statement made during a police interrogation during which she described the stabbing. Crawford, however, had no opportunity for cross-examination because Sylvia was barred from testifying at trial by the state marital privilege. The state court admitted the tape-recording as evidence bearing "particularized guarantees of trustworthiness." *Crawford* at 39-40. The Supreme Court, on *certiorari* review, reversed the state court conviction and held that admission of Sylvia's tape-recorded statement violated the Confrontation Clause of the Sixth Amendment. The Court held: "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. The Supreme Court stated that "We leave for another day any effort to spell out a comprehensive definition of 'testimonial,'" but the Court did identify statements that would clearly qualify as "testimonial":

> Whatever else the term covers it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; *and to police interrogations*.

*Id.* at 68 (emphasis added). *See also Davis v. Washington*, 547 U.S. 813, 822 (2006) ("Statements . . . are testimonial when the circumstances objectively indicate . . . that the

primary purpose of the [police] interrogation is to establish or prove past events potentially relevant to later criminal prosecution.").

The statements Rackley made to Officer Moss during his interrogation at the sheriff's office are clearly "testimonial" under *Crawford*. Because Petitioner had no opportunity to cross-examine Rackley, admission of Rackley's out-of-court, testimonial statements through the trial testimony of the interrogating officer was a violation of the Confrontation Clause. In deciding Petitioner's *Crawford* claim in post-conviction proceedings, the OCCA failed to apply the holding in *Crawford* under circumstances directly addressed by the Supreme Court.

The precise issue before this Court, however, concerns the OCCA's adjudication of the claim that appellate counsel's failure to raise a *Crawford* claim on direct appeal constituted ineffective assistance of appellate counsel.[5] And that question on habeas review requires a different analysis. All ineffective assistance of counsel claims are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a petitioner must establish that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*

---

[5]As noted above, the OCCA found the Sixth Amendment *Crawford* claim was procedurally barred as a claim that could have been raised on direct appeal. To the extent Petitioner claims ineffective assistance of appellate counsel as "cause" for failure to raise the Sixth Amendment *Crawford* claim on direct appeal in addition to his substantive claim of ineffective assistance of appellate counsel, the precise issue before the Court remains the same. *See, e.g., Ross v. Ward*, 165 F.3d 793, 798 (10th Cir. 1999) (claim of ineffective assistance of appellate counsel, if proven, constitutes adequate cause for failure to raise substantive issue on direct appeal).

*v. Washington*, 466 U.S. 668, 688, 694 (1984). On habeas review, then, Petitioner must show that the OCCA's adjudication resulted in a decision that was contrary to or involved an unreasonable application of *Strickland*. And attention must be directed to the result and not the reasoning.

This Court's review of the OCCA's determination of Petitioner's ineffective assistance of appellate counsel claim is subject to the deference due all state court decisions in the context of federal habeas review. The Supreme Court recently clarified the deference due a state court's decision on habeas review when claims of ineffective assistance of counsel are at issue:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter* at 785 (internal quotations and citation omitted).[6] The Supreme Court emphasized that it is the *result* of the state court's decision which must "be evaluated according to the precedents of this Court." *Id.* at 786. The Supreme Court acknowledged that AEDPA's standard of review makes it difficult for a petitioner to obtain habeas relief:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-787. As the Supreme Court further explained:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Id. at* 786.[7] To show that he was prejudiced by appellate counsel's allegedly deficient performance, Petitioner would have to show a reasonable probability that the results of his

---

[6]In his supplemental brief [Doc. #23], Respondent draws this Court's attention to the Supreme Court's recent decision in *Harrington v. Richter*. As noted above, in *Richter* the Supreme Court considered the deference due a state court's application of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) when addressing claims of ineffective assistance of counsel on habeas review. Petitioner argues in his reply [Doc. #24] that *Richter* does not apply to his claims of ineffective assistance of appellate counsel. The standard for reviewing ineffective assistance of counsel claims is, however, the same whether a petitioner is asserting ineffective assistance of trial counsel or ineffective assistance of appellate counsel. Therefore, this Court has considered and applied the holding in *Richter*.

[7]This Court need not consider both prongs of the *Strickland* test if a petitioner makes an insufficient showing on one. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . , that course should be followed." *Strickland* at 697 (internal quotations omitted).

appeal would have been different had his appellate counsel successfully challenged the admission of Rackley's statement under *Crawford v. Washington*.

*Crawford* errors are subject to a harmless error analysis. *See United States v. Mendez*, 514 F.3d 1035, 1043 (10th Cir. 2008); *United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir. 2005) (*Crawford* violation was harmless beyond a reasonable doubt where jury was presented ample evidence of the defendant's guilt). In assessing the effect of a Confrontation Clause error, a court may consider such factors as the importance of the witness's testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the witness's testimony on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Applying those factors to this case does not lead to a clear cut answer. First, the prosecution relied entirely on circumstantial evidence of guilt. But Rackley's out-of-court statement constituted only one piece of circumstantial evidence among many others in the prosecutor's case. The prosecutor mentioned the statement once in his main closing argument but not in rebuttal. And the statement did not receive exceptional emphasis in the prosecutor's presentation. The statement indicating the presence of the men on Western Equipment's property, although not subject to cross-examination, was corroborated by shoe prints found on the premises, consistent with those of two of the defendants. No evidence contradicted Rackley's statement that he had walked through the property. Finally, the overall strength of the prosecution's case, although perhaps not overwhelming because

15

entirely circumstantial, was certainly solid and logical.[8] It is not unreasonable to reach a conclusion that the Confrontation Clause violation was harmless error, *i.e.*, harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18 (1967); *see also United States v. Toles*, 297 F.3d 959, 967-968 (10th Cir. 2002). Consequently, Petitioner cannot show that there is a reasonable probability of a different result on appeal, as required to meet the second prong of the *Strickland* standard.

When analyzing the result of Petitioner's *Strickland* claim through the lens of AEDPA deference, the Court finds no "error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter* at 786-787. It is likely that the OCCA reached the correct result on the *Strickland* claim. And under § 2254(d), the fact that it reached a reasonable result is sufficient. *See id*. The result of the OCCA's adjudication is neither contrary to, nor an unreasonable application of *Strickland*. Therefore, Petitioner is not entitled to habeas relief on this claim.

---

[8]Excluding Mr. Rackley's statement, the OCCA's summary of the evidence supporting Petitioner's conviction of attempted grand larceny is as follows:

> The State showed that the gate to Western Equipment was cut, a trailer and five ATVs were moved and four ATVs were loaded onto the trailer. A store forklift was also out of position and apparently used to move the merchandise. This occurred after store closed on the afternoon of April 15. A witness heard a vehicle moving in the Western Equipment yard about 2:00 a.m. on April 16. Gregor's shoes resembled footprints at the crime scene. Gregor was stopped while walking with the co-defendant men less than a mile from Western Equipment shortly after the crime was reported. . . . Gregor's wife, driving a pickup with a ball hitch which could have pulled the trailer, was stopped on the road leading to Western Equipment about the time of the arrests.

Original Response, Exhibit 3 at 2 n. 4.

## B.    Jury Instructions

Petitioner contends that the jury was not properly instructed on the elements of "Attempted Grand Larceny."   Specifically, Petitioner complains that "there was no Attempted jury instruction given" and that "the trial court merely added Attempted to the elements of grand larceny."  Petitioner's Opening Brief [Doc. # 1-2 ] at 8.  The record demonstrates, however, that an instruction on the definition of "attempted" was given to the jury.

On direct appeal, the OCCA rejected Petitioner's argument stating that "the jury instructions adequately stated the applicable law and included all the elements of attempted grand larceny."  Original Response, Exhibit 3 at 2.

The trial court's instructions were taken from the Oklahoma Uniform Jury Instructions.  Instruction No. 27 outlines the elements of "Attempted Grand Larceny."

> No person may be convicted of attempted grand larceny unless the State has proved beyond a reasonable doubt each element of the crime.  These elements are:
>
> First,          attempted;
> Second,      taking;
> Third,         carrying away;
> Fourth,       personal property;
> Fifth,          of another;
> Sixth,         valued at more than $500;
> Seventh,     by stealth;
> Eighth,       with the intent to deprive permanently.

OUJI-CR 5-93 (2003 Supp.).  *See* Original Response, Exhibit 5.  Instruction No. 28 defines "attempted" as "[p]urposely engaging in conduct which would constitute the crime if the

attendant circumstances were as he believes them to be." OUJI-CR 5-106 (2003 Supp.). *See* Original Response, Exhibit 6.

The Supreme Court has stated that, with respect to alleged errors in jury instructions, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the error had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990). A petitioner who seeks habeas relief by attacking a state conviction on the basis of the jury instructions "has a great burden." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995).

Here, Petitioner fails to satisfy the great burden necessary for federal habeas relief. First, the jury instructions correctly set out the elements of the offense of grand larceny, including the kind of culpability required, and the instructions defined "attempted" consistent with Oklahoma's statutory definition.[9] Second, the term "attempted" is not so

---

[9]Oklahoma's statutory provision defining "attempt" states as follows:

A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or,

(continued...)

18

technical as to require further elaboration.  Petitioner has not demonstrated the OCCA's adjudication of this issue is contrary to or an unreasonable application of clearly established federal law, and habeas relief should be denied as to Ground Two of the Petition.

### C.  Sufficiency of the Evidence

Petitioner raised this claim on direct appeal.  Rejecting the claim on the merits, the OCCA applied the proper standard governing sufficiency of the evidence challenges as set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979):

> We find in Proposition IV, that, taking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Gregor intended to commit grand larceny and performed an overt act toward commission of . . . that crime.

*See* Original Response, Exhibit 3 at 2.  Therefore,  Petitioner is entitled to relief only if the OCCA's rejection of his insufficiency of the evidence argument on direct appeal of his conviction was contrary to, or an unreasonable application of, the holding in *Jackson*.

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction [is] . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson*, 443 U.S. at 318.  In conducting this inquiry, the court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  *Id*. at 318-319 (citation omitted).

---

[9](...continued)
> (b) when causing a particular result in an element of the crime, does anything with the purpose of causing or with the belief that it will cause such result, without further conduct on his part.

Okla. Stat. tit. 21, § 44.

"Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (citation omitted). As the Supreme Court has explained, "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. On review, this evidence must be considered in the light most favorable to the prosecution so as to preserve the fact finder's role as weigher of the evidence. *Id*.

Based on review of the entire record and application of the proper standards, the Court concludes the evidence is constitutionally sufficient, and the OCCA's determination of this issue is not contrary to, or an unreasonable application of, the Supreme Court's ruling in *Jackson*. Accordingly, Ground Four of the Petition should be denied.

### D.    <u>Cumulative Error</u>

Petitioner claims that cumulative error arising out of the claims raised in Grounds One through Four of the Petition deprived him of a fundamentally fair trial in violation of his due process rights. Petitioner raised this claim on direct appeal, and the OCCA denied the claim. *See* Original Response, Exhibit 3 at 2 ("We find in Proposition V that, as there is no error, there is no cumulative error.").

In reviewing a claim of cumulative error, a court may consider only actual errors for purposes of determining whether a due process violation has occurred. *See Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) ("[A] cumulative error analysis should evaluate only the

effect of matters determined to be error, not the cumulative effect of non-errors.") (*citing United States v. Rivera*, 900 F.2d 1462,1470-71 (10th Cir. 1990)).  *See also Workman v. Mullin*, 342 F.3d 1100, 1116-1117 (10th Cir. 2003) ("Workman's sentence cannot be unconstitutional due to cumulative error because we have not found that the district court committed error.").  This Court has reviewed the claims raised in the other grounds for habeas relief and has not found multiple errors that could result in cumulative error. Therefore, this claim is without merit.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by August   26th v , 2011.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this   5th   day of August, 2011.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE